PARADE PRODUCTS, INC., Plaintiff, *v.* JAYSID MANUFACTURING & DISTRIBUTING Co., INC., Defendant.

Supreme Court, Special Term, Kings County, November 4, 1949.

*Burton S. Cooper* for plaintiff.

*Gronich, Herbsman & Aleyner* for defendant.

MURPHY, J. The plaintiff corporation produces and sells an all-metal, collapsible clothes hanger and the defendant corporation is in the same business. The plaintiff here seeks injunctive relief to restrain the defendant in the use of its display cards, especially with reference to the size, wording, lettering and pictures on said cards. The plaintiff also seeks to restrain the defendant from using a continuous reel motion picture with certain scenes and dialogues which the plaintiff claims are so similar to the plaintiff's motion picture entitled " Closets Crowded? " that the defendant's picture constitutes an act of unfair competition. In addition, plaintiff seeks to restrain the defendant corporation from the use of any symbol, mark, design or device so nearly like that used by the plaintiff as to deceive the plaintiff's customers and the public generally.

At the outset it should be stated that the plaintiff does not claim that its collapsible clothes hanger or space saver is a patented article, nor does the plaintiff rely on any copyright laws or regulation with reference to the display cards or motion picture.

The clothes hanger or space saver produced and marketed by both the plaintiff and defendant are so near alike as to be almost identical. The products of both litigants were put into evidence and, except for certain details, are similar. The retail price of each is $1.49. The products are distributed for sales purposes in substantially the same manner, one of the main channels of distribution being department stores. The identical means of advertising are used to promote the sale of both the plaintiff's and defendant's product, to wit, newspapers in a rather limited degree, manual demonstrations by sales people, motion picture exhibitions in which the type of each product and its uses are dramatized, and display cards to which the product of each litigant is attached.

The president of the plaintiff corporation testified that his company was in the business of producing and selling the all-metal space saver with the trade name of " Waldor " before the defendant company began to produce and distribute its all-metal clothes hanger or space saver, the trade name of which is " Foldaway." There was also testimony to the effect that two of the officers of the defendant corporation negotiated in or about June of 1947, with the sole distributor of the plaintiff's product for the exclusive right to sell the plaintiff's product. This negotiation crystallized to the point where a formal contract was drawn between the aforesaid distributor of the plaintiff's product and the two officers of the defendant corporation, but the entire transaction collapsed when the plaintiff corporation refused to approve the agreement. Thereafter the defendant corporation started to produce, distribute and sell its own clothes hanger or space saver in competition with the plaintiff. There is no contention by the plaintiff that the defendant does not have the right to produce and sell its " Foldaway." In fact, a product similar to both the plaintiff's and defendant's clothes hangers is manufactured by three or four other organizations. In other words, there is no doubt that the product involved is in the public domain and that anyone can manufacture and sell it.

The plaintiff, through its president, introduced into evidence its display card as well as the display card of the defendant corporation. There is a similarity in size, shape, general design and wording between the plaintiff's display card and the defendant's card. It should be noted, however, that the colors used are distinctly different. The background of the plaintiff's card is black with red and white being used as additional features of the design. The defendant's card is of a predominantly red background with red lettering being used in white spaces and white lettering being used over red spaces. At the top of the plaintiff's card its trade name " Waldor " appears in large letters, while on the defendant's card its trade name " Foldaway " likewise appears in large letters. The name of each producer appears at the bottom of each card.

It should be observed that the wording on the two display cards has a great deal of similarity. Upon analysis, however, it is difficult to determine how the defendant could possibly describe its product except in the language which is used on the display card. The product of each party is mostly bought and used by housewives and the language on the display cards must be simple, direct and easily and quickly understood. The product of each

party being similar in design, function and use, the respective descriptions must of necessity be substantially alike. This may be unfortunate insofar as the plaintiff is concerned, especially in view of the fact that it was in business before the defendant. The fact remains, however, that the space saver or clothes hanger of each of the parties, being so similar in every respect, requires the same type of descriptive literature in explaining it to the public. It would seem to be an impossible task for a copywriter to use substitutes for such words as metal, space saver, garments, wrinkling, crushing, dresses, blouses, folds flat, suits, overcoats. Even in the use of these words the defendant appears to have changed their position on its card so as to indicate a difference from the plaintiff's card.

It is true that the shape of both cards is the same, but it would be impossible to have the shape different because of the size and shape of the product itself, which is attached to the cards of both parties.

Despite certain similarity between the two cards in the respects noted above, this court does not find that the defendant has acted in unfair competition in the manner in which it has produced and distributed its display cards.

The same general observations may be made with reference to the motion picture produced by each of the parties in this action. Of necessity the defendant had to describe its product in its motion picture in the same general manner adopted by the plaintiff for the same reasons as it used phraseology on its display cards similar to that of the plaintiff. The products are so identical that it is impossible for the court to see how simple descriptions and uses could be presented in language or style distinctly different. The court does not agree with the contention of the plaintiff that the defendant acted unfairly in the production and distribution of its motion picture promoting the sale of its product.

During the trial, learned counsel for the plaintiff stated that he also contended on behalf of his client that the defendant was guilty of unfair competition in the manner in which it promoted, demonstrated and sold its product in department stores. It is the court's opinion, as stated at the time of the trial, that the defendant has every legal right to sell in any department store that will permit the sale of its products, and in the manner which it elects to use. In doing what it has done in this respect defendant corporation has not indulged in any unfair competition. It has a right to demonstrate its product, its function and its uses manually or by means of motion pictures, the same as the plaintiff does.

There is no proof before the court that the display cards, motion pictures, advertisements or other means of promotion used by the defendant did deceive or confuse or tended to deceive or confuse the customers of the plaintiff corporation or the public generally. The plaintiff, in the opinion of the court, did not submit evidence sufficient to prove that its product had a so-called "secondary meaning," which would be so important to the plaintiff in maintaining its position in this action. The plaintiff testified that it spent $68,089 from April, 1947, to April, 1949, in the promotion and advertising of its product. It is indeed difficult to see how the plaintiff's product could have acquired a secondary meaning to the public in view of the limited advertising expenditures made, because the plaintiff's product was distributed in a group of cities and towns, including Brooklyn, New York, Boston, Washington, Allentown, Philadelphia, Chicago, Baltimore and Cincinnati. It would have taken a great deal more money than that expended by the plaintiff over a period of two years to gain for its product a secondary meaning which would substantiate the court holding in its favor in this regard.

Competition is often harsh and it is difficult at times for a well-meaning business man to see the fairness of the competitor who invades his territories, produces the same product and adopts the same means of distribution, advertising and sales promotion. However, the competitive system is part of American business life, and where it is practiced with no unfairness, or deception or confusion of the public, it must be accepted philosophically, even though at times its results are disconcerting.

Judgment is granted in favor of the defendant, dismissing the complaint, without costs. Submit judgment on notice. Pleadings and exhibits may be had from the clerk.